RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 10/13/11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LONNIE B. SIMON, JR. | DOCKET NO. 11-CV-1310; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| TERRY TERRELL, ET AL | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Pro se Plaintiff Lonnie B. Simon, Jr., filed the instant civil rights case pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of the Louisiana Department of Corrections, and he is incarcerated at the Allen Correctional Center in Kinder, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Factual and Procedural Background*

Plaintiff filed an original complaint on July 7, 2011, but he failed to submit the filing fee or an application to proceed in forma pauperis until August 4, 2011. [Doc. #1, 5] He filed an amended complaint on August 4, 2011, as well. [Doc. #7] On August 10, 2011, he was granted pauper status. [Doc. #6] On August 22, 2011, Plaintiff filed a third amended complaint [Doc. #8], and on September 16, 2011, he filed a "Memorandum in Support" of his complaints [Doc. #9].

1. **ORIGINAL COMPLAINT**

In his original complaint, Plaintiff alleges that on December 18, 2010, he was injured while on "work release." The nurse at the

work release facility wanted Plaintiff to take three days off of work, but Plaintiff continued working. His supervisor put him on light duty until Plaintiff's arm became swollen, painful, and bruised. He was taken to Huey P. Long Medical Center where x-rays were performed. Plaintiff was diagnosed with a stress fracture in the shoulder. He was referred to a "bone clinic specialist" as well as an orthopedic specialist at Huey P. Long. Medication for pain, inflammation, and spasms was prescribed, as was physical therapy. He was transferred from work release back to Rapides Parish Detention Center #3 on or about January 24, 2011. The staff at Rapides failed to bring Plaintiff for his follow up appointments and failed to provide him with the prescribed treatment. [Doc. #1, p.4-5] Plaintiff claims that the denial of care resulted in excruciating pain and nerve damage.

Plaintiff states that Human Resources Deputy Steven Boeta and Work Release Warden Dyess and Assistant Warden LeBrane had knowledge of a doctor's appointment on January 24, 2011, yet they failed to transport him to the appointment. Instead, they transferred him to Hunt Correctional in St. Gabriel without any of his belongings or medications for which he had paid several hundred dollars. He was provided with Motrin. At some point thereafter, he was transferred to Allen Correctional, where the majority of the named defendants are employed.

Finally, he argues that this is his third lawsuit against the

same individuals with GEO Group, so it must have merit. Plaintiff also complains that twenty percent of his funds are being confiscated from each money order that he receives.

## 2. FIRST AMENDED COMPLAINT

In his first amended complaint [Doc. #7], Plaintiff complains again about 20% being taken out of his prison account even though he believes his filing fees have been paid in full by this point. He mentions that he lost 120 days of good time at Allen Correctional for an unspecified reason.

## 3. THIRD AMENDED COMPLAINT

In his third amended complaint, filed on August 22, 2011, Plaintiff complains that Mr. Ed Shirley and Ms. Kayla Courville charged him for his medical records in violation of the constitution because he is entitled to one free copy of the documents. He also complained that Warden Terry Terrell, Angie Easom, Dr. Harris, Damika Harmon, Nurse Granger, Nurse Robichaux, Nurse Gautreaux, and Trisha Johnson denied him medical care.

## 4. MEMORANDUM IN SUPPORT

In Plaintiff's "memorandum" in support of his complaints, he rambles about homosexual inmates at various jails and claims that the government promotes "gaynism/homosexuals". [Doc. #9]

## 5. MEDICAL RECORDS

With Plaintiff's "memorandum" [Doc. #9], he provides copies of his medical records. Those records indicate as follows:

Rapides DC 3

1/31/11 - x-ray of left forearm; left arm sling provided [Doc. #9, p.31]

Hunt Correctional Center

2/3/11 - medical notes indicate that x-ray results were pending and Plaintiff refused NSAIDs due "to stomach"; he presented with left arm weakness and was using a sling.

2/8/11 - Radiology report states no fractures or dislocations. [Doc. #9, p.116]

Allen Correctional Center (ALC)

2/28/11 - Intrainstitutional Health Screening - reflects hypertension and fracture of left forearm and elbow; needs 3 top right back teeth pulled; currently taking clonidine .2mg, Zantac 150 mg; Tylenol 325 mg; Vasotec 10 mg. His duty status was "light duty" [Doc. #19]

2/28/11 - Work limitations - no use of left arm for 6 months; Housing limitation - lower bunk. [Doc. #9, p.27]

3/1/11 - Staff request stating "Need x-ray results from Hunts" [Doc. #9, p.25] Treatment plan states "Please obtain x-ray results" from Hunt [Doc. #9, p.34]

3/7/11 - Nurse call out; blood pressure high; pressure rechecked at 9:50, 9:55, 10:00, and 10:40 complained of left arm pain [Doc. #9, p.35, 36]

3/16/11 - Plaintiff complained of left arm pain 6 on scale of 10; encouraged to quit smoking; checked blood pressure at 9:20, 9:30, 10:00, 10:30, and 10:40. [Doc. #9, p.38-9] Plaintiff insisted on signing a medical refusal because he did not want his blood pressure checked any more. [Doc. #39, 40]

3/18/11 - Allen Correctional physician received copy of radiologist's findings from Hunt. [Doc. #9, p.115]

3/21/11 - Response to Offender Request Form regarding blood pressure and pain in left shoulder/arm/hand indicating that Plaintiff was taking Motrin 800mg twice ad ay for pain as well as blood pressure medication. [Doc. #9,

4

p.24]

3/23/11 - Inmate request for medical care regarding left elbow, wrist, shoulder pain due to injury at previous facility. Plaintiff was prescribed muscle rub to use as needed and referred to the doctor. [Doc. #9, p.27, 120]

3/24/11 - Doctor notes that X-ray performed on 3/1/11 was negative. Plaintiff to follow up with Dr. Harris if no improvement. [Doc. #9, p.43]

4/1/11 - RN notation "L arm & shoulder pain" [Doc. #9, p.26] Plaintiff complained of pain, spasms, burning, numbness in his left elbow, shoulder, and wrist. He had limited range of motion. He refused Ibuprofen, but was provided a tube of analgesic balm to apply twice a day. [Doc. #9, p.42] He was also prescribed Tylenol. [Doc. #9, p.125]

4/8/11 - medical callout for pain management by LPN to se MD. The physician noted no swelling, normal appearance, normal biceps tendon reflex, decreased strength. X-ray showed no fracture. Neurontin prescribed for seven months and x-ray of left shoulder ordered. [Doc. #9, p.46]

4/14/11 - Sick call; provided tube of muscle rub [Doc. #9, p.8]

5/31/11 - continued complaints; no edema of left arm. Medication ordered for left ear drainage. X-ray was taken of left shoulder; Plaintiff referred to Dr. For x-ray results [Doc. #9, p.20, 49]

Dr. Harris ordered difulcan for ear infection, as well as Augmentin and floxacin. Dr. ordered staff to check the status of the shoulder x-ray and send Plaintiff back when results were available. [Doc. #9, p.50]

6/9/11 - Lab drawn [Doc. #9, p.59]

6/10/11 - Medical callout for pain management; still taking neurontin 600mg. MD ordered neurontin 300mg for six months.

6/17/11 - Follow up appointment. Received ear medication and hydrocortisone cream for rash [Doc. #9, p.64]

7/1/11 - examined for ear infection and shoulder pain. Received ear medication.

5

7/12/11 - Offender Request form for glasses; Response on 7/13/11 stating that the eye doctor prescribed reading glasses which could be purchased from the canteen. [Doc. #9, p.29]

7/14/11 - follow up for ear pain; inmate asked for a sling and muscle rub, and was provided same. [Doc. #9, p.63]

7/29/11 - Muscle rub for shoulder dispensed; referred for pain management. [Doc. #9, p.53]

8/3/11 - response to sick call stating that Plaintiff would see Dr. Harris on 8/5/11. [Doc. #9, p.54]

8/5/11 - Follow up appointment with physician. Notation of bursitis/tendonitis of left shoulder. Prescribed Ultram 50 mg for fifteen days. [Doc. #9, p.112]

8/18/11 - Sick call; medications provided for ear infection and food infections [Doc. #9, p.9]

8/5/11 - Appointment scheduled at 8:30 a.m. [Doc. #9, p.7]

9/8/11 - Appointment scheduled at 8:30 a.m. [Doc. #9, p.7]

*Law and Analysis*

To state a claim under §1983, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976). Not all inadequate medical treatment rises to the level of an Eighth Amendment violation; "it is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." See id. at 106. A plaintiff must prove "objectively that he was exposed to a **substantial risk of serious harm**," and that "jail officials acted or failed to act with **deliberate indifference** to that risk," which requires actual knowledge and

6

deliberate disregard. <u>Victoria W. v. Larpenter</u>, 369 F.3d 475, 483 (5th Cir. 2004), *quoting* <u>Lawson v. Dallas County</u>, 286 F.3d 257, 262 (5th Cir. 2002).

A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. <u>See</u> <u>Gobert v. Caldwell</u>, 463 F.3d 339, 346 (5th Cir. 2006). In cases involving the alleged denial of medical treatment, the facts underlying a claim of deliberate indifference must clearly evince the serious medical need in question and the alleged official dereliction. <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir. 1985). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." <u>Gobert v. Caldwell</u>, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "Deliberate indifference is an extremely high standard to meet." <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001). "[T]he plaintiff must show that the officials **refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.**" <u>Id.</u> (emphasis added)(internal quotation marks and citation omitted). "[M]ere negligence, neglect, or medical malpractice" do

not constitute deliberate indifference. <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991). Even "gross negligence" does not establish deliberate indifference. <u>See</u> <u>Hernandez v. Tex. Dep't of Prot. and Reg. Servs.</u>, 380 F.3d 872, 882 (5th Cir. 2004).

In this case, Plaintiff submitted over 100 pages of medical records from just this year, documenting medical treatment from January through September. The records, as outlined above, show that multiple x-rays were taken, oral and topical medication were prescribed and provided to Plaintiff including: Neurontin for nerve pain, Clonidine and Vasotec for high blood pressure, Zantac for heartburn/reflux, Tylenol 325 mg for pain, Motrin for pain, Claritin and Zyrtec for allergies, . Plaintiff has been issued a light or limited duty status, and he has been provided a lower bunk to accommodate his limitations. He has been under the care of a physician and other medical staff, and has been examined by both on numerous occasions. He has also received medical care for high blood pressure, ear infections, and vision changes.

Despite his conclusory allegation that he was denied medical care, the complaints and exhibits lack any evidence whatsoever indicating that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. In fact, the exhibits indicate that Plaintiff has received substantial medical care, consistent

8

monitoring of his blood pressure (even to the extent that Plaintiff chose to refuse additional blood pressure checks).

What Plaintiff has essentially alleged is that he disagrees with his medical treatment, which does not state a claim under the Eighth Amendment. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997), citing Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Plaintiff's disagreement with the course or quality of his medical treatment does not state a claim for which relief can be granted.

As for Plaintiff's claim that 20% of his money is being fraudulently taken from him because his **two** prior suits were paid in full. However, a review of the case filings indicates that Plaintiff has filed **three** prior lawsuits for which he was allowed to proceed without pre-payment of fees: (1) *Simon v. Dept. of Public Safety, et al.* 2:08-cv-1141, Doc. #5 - ordering that Plaintiff make payments of 20% of his income for preceding month until $350.00 has been paid in full; (2) *Simon v. GEO ALC Group, et al.*, 2:08-cv-1153, Doc. #3 - ordering that Plaintiff make payments of 20% of his income for preceeding month until $350.00 has been paid in full; (3) *Simon v. Public Safety & Corrections* 5:08-cv-1032, Doc. #3 - ordering that Plaintiff make payments of 20% of his income for preceding month until $350.00 has been paid in full. Moreover, in the captioned case, Plaintiff has been allowed to proceed without pre-payment of fees. Again, he will have to pay

9

20% of his income until $350.00 is paid in full. That is a total of $1,400.00 for the four lawsuits.

## *Conclusion*

The Court is convinced that Plaintiff has presented the best case that could be presented by him under these circumstances, and that further amendment of the pleadings would serve no useful purpose. Accepting all of Plaintiff's allegations as true,

**IT IS RECOMMENDED** that Plaintiff's claim be **DENIED** and **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief can be granted under 28 U.S.C. §1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association**, 79 F.3d 1415

(5th Cir. 1996).

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 13th day of October, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE